508 P.2d 810

Betty SOVEY, Plaintiff and Respondent,

v.

Paul Ronald SOVEY, Defendant and Appellant.

No. 13116.

Supreme Court of Utah.

April 10, 1973.

Robert Felton, Salt Lake County Legal Bar Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., John Spencer Snow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a judgment ordering defendant Paul to pay plaintiff Betty $60 per month as support for Donna, infant child of Betty, for sure, and of Paul, claims he's not so sure, since he denied sireship on account of lack of access. Affirmed, with no costs.

Paul and Betty, married on April 10, 1970, were husband and wife on February 17, 1972, when Paul, a Utah resident, filed a divorce action against her, a resident of California. On the next day, February 18th, Betty received a copy of a Summons and Complaint in that action, but was not officially served personally nor under any so-called Long Arm Statute,—so that she was not amenable to the Utah jurisdiction as to alimony, support, paternity matters or anything much save a bare divorce, founded entirely on the theory that the action was one in rem based on the recognized and established fiction that a divorce may be available in the forum of a legiti-

mate domiciliary, which in turn contemplates that the situs of the so-called marital res is not adjunctive to determination of personal transitory rights.

Five days later, after filing an affidavit of impecuniosity, and on February 23, 1972, Betty resisted Paul's procedure that appeared to have been stimulated by a hope he could encourage a default judgment in his favor, with an ancillary filing of a petition under the Uniform Reciprocal Enforcement of Support Act,[1] in which she claimed Paul was her infant daughter's father, and entitled to support from the latter. Paul denied this and at a hearing to show cause, at which impecunious Betty was not present, Paul, who disputed his paternity, was given an option to fish or cut bait within five months, to prove his point. Cognizant to the alternative to pay for the support of the child, or to show nonpaternity, concededly of a child born in wedlock, he chose to ignore the court's order, when he could have instituted proceedings in California directly or taken Betty's deposition in California, could have perpetuated testimony of whomever he wished to testify in his behalf, or otherwise proved his point,—but didn't. He relied on the tattered claim that he, who instituted a divorce action in this state against an impecunious woman he had married, with a view to end the relationship with her without any personal service

upon her, and with the possible knowledge of her impecuniosity,—now claims that unduly he is being set upon and denied his constitutional rights. This court does not feel constrained to drink that potion, but on the contrary, recognizes the principle that one who seeks equity must do it, and that he who seeks refuge in the pages of the Constitution, first must read them before soiling them with a rather inequitable circumstance of his own manufacture.

CALLISTER, C. J., and CROCKETT, ELLETT, and TUCKETT, JJ., concur.

---

1. Title 10a, Part 3, California Code of Civil Procedure; Title 77–45a–1, Utah Code Annotated 1953 as amended..